1   KEMNITZER, BARRON, & KRIEG, LLP
    BRYAN KEMNITZER        Bar No. 066401
2   NANCY BARRON           Bar No. 099278
    ELLIOT CONN            Bar No. 279920
3   445 Bush St., 6th Floor
    San Francisco, CA  94108
4   Telephone:  (415) 632-1900
    Facsimile:  (415) 632-1901
5   bryan@kbklegal.com
    elliot@kbklegal.com
6
    Scott D. Owens
7   *admitted pro hac vice*
    Scott D. Owens, P.A.
8   3800 S. Ocean Drive, Suite 235
    Hollywood, FL 33019
9   Phone:  (954) 589-0588
    Facsimile:  (954) 337-0666
10  scott@scottdowens.com

11  Attorneys for Plaintiffs Verina Freeman, Valecea Diggs, and the potential class

12

13

14
                        UNITED STATES DISTRICT COURT
15
                        EASTERN DISTRICT OF CALIFORNIA
16

17  VERINA FREEMAN and VALECEA          **Case No. 2:15-cv-01428-WBS-AC**
    DIGGS, individually and on behalf of all
18  others similarly situated,          CLASS ACTION

19            Plaintiffs               **FIRST AMENDED COMPLAINT FOR
                                       DAMAGES AND EQUITABLE RELIEF**
20       v.

21  WILSHIRE COMMERCIAL CAPITAL
    L.L.C., a California limited liability company,
22  dba WILSHIRE CONSUMER CREDIT,

23            Defendant.
    _____/
24

25       Plaintiffs Verina Freeman, and Valecea Diggs ("Plaintiffs"), through their attorneys, on

26  behalf of themselves and all others similarly situated, allege on personal information and upon

27  information and on belief based upon, *inter alia*, the investigation made by and through their

28  attorneys, as follows.

**INTRODUCTION**

1.      Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA") in response to widespread complaints about unsolicited and unauthorized telephone calls made to non-consenting consumers through the use of automatic telephone dialing systems ("ATDS") or by use of artificial or prerecorded voice.  Sponsoring Senator Ernest "Fritz" Hollings called such calls "the scourge of modern civilization." 137 Cong. Rec. 30,821-30,822 (1991).  Congress found that unwanted automated calls were a "nuisance and an invasion of privacy, regardless of the type of call" and that banning such calls was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2 (10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227.  To this end, the TCPA prohibits any person from making any call (other than a call made for emergency purposes or with the prior express consent of the called party) to any cellular telephone using any ATDS, or using artificial or prerecorded voice.

2.      This case concerns a particularly intrusive practice; namely that of a lender calling a borrower's third-party credit references or mere acquaintances in an attempt to collect a debt from the borrower.  WILSHIRE COMMERCIAL CAPITAL L.L.C., a California limited liability company, dba WILSHIRE CONSUMER CREDIT (collectively "Wilshire") is in the business of extending auto financing to consumers throughout the United States.  A significant part of this business involves attempting to collect on accounts when they become delinquent.

3.      As part of its policies and procedures, Wilshire collects vast amounts of personal information about its borrowers, including the telephone numbers of its borrowers' references and non-reference acquaintances, who have no business relationship to Wilshire.  Nonetheless, Wilshire harvests this information so that, in the event a borrower defaults on a payment, Wilshire can pressure a borrower to pay the debt by harassing third party acquaintances of the borrower.  These calls have the natural and intended effect of intruding on the privacy and seclusion of the recipients of such calls, in an effort to shame the borrower into payment through peer pressure.

4.      Wilshire places these calls to the borrower's acquaintances and references using

First Amended Complaint for Damages and Equitable Relief

1    an automated telephone dialing system ("ATDS"), and/or by using an artificial or prerecorded

2    voice.  Wilshire does not obtain the consent of the recipient for these calls.

3         5.      Plaintiffs are among those persons whose cellular telephone number Wilshire

4    called while attempting to collect a debt from the borrower, who is not a party to this action.

5    Plaintiffs and each putative class member did not consent, either expressly or by implication, at

6    any time whatsoever, to allow Wilshire to call them at the number assigned to their cellular

7    telephone. Plaintiffs and each putative class member paid a subscriber fee for the use of the

8    cellular phone, or had such fee paid on his or her behalf.

9         6.      Wilshire's unwanted calls caused Plaintiffs the very harm that Congress sought to

10   prevent – a "nuisance and invasion of privacy."  The calls wasted Plaintiffs' time and money, as

11   they trespassed on and interfered with Plaintiffs' rights and interest in their cellular telephones.

12   The calls were an intentional intrusion upon their solitude or seclusion, disrupting their peace

13   and quiet; the calls tied up their phone lines, trespassed on plaintiffs' telecommunications

14   equipment for their own purposes, prevented use of the phone for other calls during the time of

15   the intrusion, and used up the limited space on their voice mail. The calls further demanded a

16   return call, which was alarming or confounding, and further wasted the recipient's time.

17        7.      Plaintiffs bring this action individually and on behalf of a class of all persons

18   similarly situated, as more particularly defined below.

19                                          **PARTIES**

20        8.      Plaintiff Verina Freeman ("Freeman") is a natural person and a citizen of

21   Sacramento, State of California.

22        9.      Plaintiff Valecea Diggs ("Diggs") is a natural person and a citizen of Sacramento,

23   California.

24        10.     Defendant is a California limited liability company whose principal office is

25   located at 4727 Wilshire Blvd., Ste. 100, Los Angeles, CA  90010.

26                                **JURISDICTION AND VENUE**

27        11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

28   1331 as the claims alleged herein raise a federal question.  This Court also has jurisdiction

First Amended Complaint for Damages and Equitable Relief

1    pursuant to 28 U.S.C. § 1332(d)(2) because this matter is a class action in which Class members

2    are citizens of a different state than that of Defendant and the amount in controversy (including

3    attorneys' fees), upon information and belief, exceeds $5,000,000.00, exclusive of interest and

4    costs.

5         12.    Declaratory relief is available under 28 U.S.C. § 2201.  Injunctive relief is

6    available under 47 U.S.C. § 227(b)(3)(A).

7         13.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial

8    part of the events or omissions giving rise to the claims in this case occurred in this District.

9              **FCC RULINGS AND OTHER LEGAL DECISIONS IMPACTING CLAIMS
              BROUGHT UNDER THE TELEPHONE CONSUMER PROTECTION ACT**

10

11        14.    Congress has vested the Federal Communications Commission ("FCC") with the

12   authority to issue interpretations, rules and regulations to implement the TCPA, and the FCC has

13   done so in a series of Orders broadly interpreting the protections the TCPA provides to

14   consumers. 47 U.S.C. § 227(b)(2).   According to findings by the FCC, such calls as those

15   alleged herein are prohibited because, as Congress found, automated or prerecorded telephone

16   calls are a greater nuisance and invasion of privacy, and such calls can be costly and

17   inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls

18   whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing*

19   *the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, Report and Order, 18

20   FCC Rcd 14014 (2003).

21        15.    In enacting the TCPA, Congress intended to give consumers a choice as to how

22   creditors and telemarketers may call them, and made specific findings that "[t]echnologies that

23   might allow consumers to avoid receiving such calls are not universally available, are costly, are

24   unlikely to be enforced, or place an inordinate burden on the consumer.  TCPA, Pub.L. No. 102–

25   243, § 11. Toward this end, Congress found that:

26        Banning such automated or prerecorded telephone calls to the home, except when
          the receiving party consents to receiving the call or when such calls are necessary
27        in an emergency situation affecting the health and safety of the consumer, is the
          only effective means of protecting telephone consumers from this nuisance and
28        privacy invasion,

First Amended Complaint for Damages and Equitable Relief

1   Id. at § 12; cited in *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at* 4

2   (N.D. Ill. Aug. 10, 2012). Congress also specifically found that:

3         the evidence presented to the Congress indicates that automated or prerecorded
          calls are a nuisance and an invasion of privacy, regardless of the type of call….

4

5   *Id*. at §§ 12-13. *See also, Mims*, 132 S.Ct. at 744.  Judge Easterbrook stated it this way:

6         The Telephone Consumer Protection Act (TCPA or "the Act"), 47 U.S.C. § 227, is
          well known for its provisions limiting junk-fax transmissions. A less-litigated part

7         of the Act curtails the use of automated dialers and prerecorded messages to cell
          phones, whose subscribers often are billed by the minute as soon as the call is

8         answered—and routing a call to voicemail counts as answering the call. An
          automated call to a landline phone can be an annoyance; an automated call to a cell

9         phone adds expense to annoyance.

10  *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

11        16.     Under the TCPA, and pursuant to the FCC's January 2008 Declaratory Ruling,

12  the burden is on the Defendant to demonstrate that Plaintiffs provided express consent within the

13  meaning of the statute.  *FCC Declaratory Ruling,* 23 F.C.C.R. at 565 (¶10).

14        17.     The FCC has ruled that the "capacity (A) to store or produce telephone numbers

15  to be called, using a random or sequential number generator; and (B) to dial such numbers"

16  without human intervention in the calling process is the hallmark of an ATDS.  *In the Matter of*

17  *Rules and Regulations Implementing the Telephone Consumer Protection Act of 2008*, CG

18  Docket No. 02-278, FCC 07-232 (1/4/08) ¶13; *In the Matter of Rules and Regulations*

19  *Implementing the Telephone Consumer Protection Act of 1991*, 2003 WL 21517583, 18 F.C.C.R.

20  14014, ¶132 (Fed. Commc'n Cmm'n July 3, 2003) ("2003 TCPA Order").

21        18.     Following Congress' directive, the FCC has expanded the definition of ATDS to

22  include predictive dialers. *In the Matter of Rules and Regulations Implementing the Telephone*

23  *Consumer Protection Act of 1991*, CG Docket No. 02-278, 18 FCC Rcd 14014, 14092-93 (June

24  26, 2003) at ¶133.

25        19.     With respect to whether a device is considered an "automatic telephone dialing

26  system" for purposes of the TCPA, the Ninth Circuit has specifically noted that "a system need

27  not actually store, produce, or call randomly or sequentially generated numbers, it need only

28  have the *capacity* to do it." *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946 (9th Cir. 2009)

1    (emphasis added). Furthermore, the FCC and federal courts have held that a predictive dialer

2    falls within the meaning and statutory definition of "automatic telephone dialing equipment"

3    within the TCPA.  *2003 TCPA Order,* 18 FCC Rcd 14092-3 at ¶133.*See generally, Griffith v.*

4    *Consumer Portfolio Serv., Inc.*, No. 10-c-2697 (N.D. Il. Aug. 16, 2011).

5           20.     The FCC also ruled, "We also reject [the] argument that the Commission should

6    adopt a 'human intervention' test by clarifying that an autodialer is not an autodialer unless it has

7    the capacity to dial numbers without human intervention. Because the Commission has

8    previously rejected a restrictive interpretation of autodialer in favor of one based on a piece of

9    equipment's potential ability, we find that [the] argument amounts to a simple variation on the

10   'present ability' arguments we reject above."  2015 TCPA Order at ¶20.

11          21.     Enforcement of the TCPA is subject to a four-year statute of limitations pursuant

12   to 28 U.S.C. § 1658.

13                                             **FACTS**

14   **A.      Wilshire Did Not Have Any Prior Relationship with, or Consent to Call, Plaintiffs**

15          22.     At some point prior to the filing of this complaint, a Wilshire account holder, or

16   would-be account holder, who is not a party to this action, listed Plaintiffs as personal references

17   on a loan application (hereafter "the borrower").

18          23.     In an effort to locate, and to collect money from the borrower, Wilshire, during

19   the period from December 17, 2010 to the present, used an ATDS or an artificial or prerecorded

20   voice to place calls and text messages to Plaintiffs' cellular telephones.  Each Plaintiff was a total

21   stranger to the transaction between the borrower and Wilshire.  None of the Plaintiffs were co-

22   obligors on the financing

23   **B.      Wilshire's Calls to Plaintiff Freeman**

24          24.     At all times relevant herein Plaintiff Freeman had a cell phone, number XXX-

25   XXX-1546, for which she was charged a monthly fee. Wilshire obtained Freeman's phone

26   number without her consent and used an ATDS to call Freeman's cellular phone number, XXX-

27   XXX-1546 at least 8 times from December 17, 2010 to the present in connection with the

28   borrower's debt.

First Amended Complaint for Damages and Equitable Relief

1        25.    At all times relevant, Freeman was the sole subscriber or customary user of the

2  cellular telephone number at issue.  At no point did Freeman provide prior express consent for

3  Wilshire to call her cellular telephone, nor did any third-party with "common authority" provide

4  prior express consent.

5        26.    None of the calls were placed for an "emergency purpose" or with "prior express

6  consent of the called party" within the meaning of 47 U.S.C. § 227(b)(1)(A).

7        27.    These unauthorized calls harmed Freeman, because they caused her to suffer a

8  nuisance and an invasion of privacy.  Further, the calls wasted Freeman's time and money, as

9  they required her to take time out of her schedule to deal with them, they trespassed on her use of

10  the phone for which she was charged a monthly fee, they used up space on her voicemail, and

11  they depleted the battery on her cellular telephone.

12        28.    At all times relevant to this complaint, Freeman maintained exclusive custody and

13  control over the cellular telephone and number at issue.

14  **C.**      **Wilshire's Calls to Plaintiff Diggs**

15        29.    At all times relevant herein Plaintiff Diggs had a cell phone, number XXX-XXX-

16  2477, for which she was charged a monthly fee.  Wilshire obtained Diggs's phone number

17  without her consent and used an ATDS to call Diggs's cellular phone number, XXX-XXX-2477

18  at least 5 times from December 17, 2010 to the present in connection with the borrower's debt.

19        30.    At all times relevant, Diggs was the sole subscriber or customary user of the

20  cellular telephone number at issue.  At no point did Diggs provide prior express consent for

21  Wilshire to call her cellular telephone, nor did any third-party with "common authority" provide

22  prior express consent.

23        31.    None of the calls were placed for an "emergency purpose" or with "prior express

24  consent of the called party" within the meaning of 47 U.S.C. § 227(b)(1)(A).

25        32.    These unauthorized calls harmed Diggs, because they caused her to suffer a

26  nuisance and an invasion of privacy.  Further, the calls wasted Diggs's time and money, as they

27  required her to take time out of her schedule to deal with them, they trespassed on her use of the

28  phone for which she was charged a monthly fee, they used up space on her voicemail, and they

1  depleted the battery on her cellular telephone.

2      33.    At all times relevant to this complaint, Diggs maintained exclusive custody and

3  control over the cellular telephone and number at issue.

4      34.    Wilshire's calls to Plaintiffs and the proposed class, by means of the use of an

5  ATDS or pre-recorded calling system, without their consent, and for the purpose of collecting on

6  debt they themselves did not owe, is an intrusion on seclusion that is highly offensive, and would

7  be highly offensive to any reasonable person.

8  **INJURY IN FACT**

9      35.    Each of the Plaintiffs and the class members had a legally protected privacy

10  interest arising out of the TCPA to be free from unwanted calls and prerecorded messages to

11  their cellular phones.

12      36.    That privacy interest barred entities like Wilshire from intruding upon the

13  Plaintiffs' and the class members' privacy.  Specifically, the TCPA barred Wilshire from calling

14  these individuals on their cellular phones using restricted technology, unless Wilshire first

15  obtained express consent.

16      37.    Plaintiffs and the class members received calls directed at them by Wilshire.

17      38.    Those calls violated the individual rights of the Plaintiffs and the class members.

18      39.    As such, the harms to the Plaintiffs and class members arose directly from the

19  violation of their respective rights by Wilshire.

20      40.    These invasions of privacy caused frustration and annoyance by the Plaintiffs and

21  class members, who had not consented to these intrusions caused by Wilshire.  The Plaintiffs and

22  class members have suffered an injury in fact.

23  **TOLLING OF THE STATUTE OF LIMITATIONS**

24      41.    The commencement of the class suit in *Alu Banarji v. Wilshire Commercial*

25  *Capital, LLC dba Wilshire Consumer Credit*, United States District Court, Southern District of

26  California, Case No. 3:14-cv-02967-BEN-KSC, tolled the running of all applicable statutes of

27  limitations per the United States Supreme Court's holding in *American Pipe and Construction*

28  *Co. v. State of Utah*, 414 U.S. 538 (1974).

First Amended Complaint for Damages and Equitable Relief

## CLASS ACTION ALLEGATIONS

42.     Upon information and belief, it is Defendant's policy and practice to place, in the course of business, autodialed calls or calls using an artificial or prerecorded voice to individuals whose cellular telephone numbers were given to Wilshire by individuals not vested with authority over the cellular telephone numbers provided.

43.     Therefore, Plaintiffs bring this class action on behalf of themselves and on behalf of all other persons similarly situated as members of the proposed class, pursuant to Federal Rule of Civil Procedure 23.  This action satisfied the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

44.     The proposed class consists of:

All persons in the United States:

(a)     to whose cellular telephones Wilshire placed one or more non-emergency calls;

(b)     using an automatic telephone dialing system or an artificial or prerecorded voice;

(c)     wherein the called party was not a signatory to an agreement with Defendant; and

(d)     the call was placed between December 17, 2010 and the present.

45.     The members of the Class are so numerous that joinder of all claims would be impracticable.  While the exact number of class members is unknown to Plaintiffs at this time, Plaintiffs are informed and believe, and on that basis allege, that there are more than 40 members of the class.

46.     There are questions of law and fact common to the Class which predominate over any questions affecting individual Class members.  The predominant common questions include:

a.     Whether Defendant used an automatic telephone dialing system or an artificial or prerecorded voice within the meaning of the TCPA and applicable FCC regulations and orders, to place the calls at issue;

b.     Whether loan applicants may consent on behalf of third parties

First Amended Complaint for Damages and Equitable Relief

1          whose name and number are listed in the "Reference" section of a

2          credit application;

3          c.          Damages, including whether the violations were negligent, willful

4          or knowing.

5          47.          Plaintiffs' claims are typical of the claims of the other members of the Class.

6 Defendant's conduct has caused Plaintiffs and members of the Class to sustain the same or

7 substantially similar injuries and damages.  Defendant's conduct has caused each member of the

8 class to suffer a nuisance or invasion of privacy, intrusion upon their seclusion and use of the cell

9 phones for which they paid a subscriber fee.  Defendant has acted in a uniform manner with

10 respect to Plaintiffs and the other class members.  Plaintiffs have no interests antagonistic to the

11 interests of the other members of the Class.

12          48.          Plaintiffs will fairly and adequately represent and protect the interests of the

13 members of the Class.  Plaintiffs are members of the Class and do not have any conflict of

14 interest with other Class members.  Plaintiffs have retained and are represented by competent

15 counsel who are experienced in complex class action litigation and claims involving violations of

16 the Telephone Consumer Protection Act.

17          49.          The nature of this action makes a class action the superior and appropriate

18 procedure to afford relief for the wrongs alleged herein.  There will be no difficulty in the

19 management of this class action.  The identity of the putative class, as well as the fact and time

20 of calls made to putative class members, is ascertainable from electronic databases within

21 Wilshire's custody or control.  Individualized litigation presents the potential for inconsistent or

22 contradictory judgments.  A class action presents far fewer management difficulties and provides

23 the benefits of single adjudication, economy of scale, and comprehensive supervision by a single

24 court.

25                              **FIRST CLAIM FOR RELIEF**
          **(Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*.)**
26

27          50.          Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

28          51.          The TCPA provides that it is unlawful for any person to make a non-emergency

First Amended Complaint for Damages and Equitable Relief

1    call using an automatic telephone dialing system or an artificial or recorded voice to any cellular

2    phone service without prior express consent of the called party.

3            52.     Defendant violated the TCPA by impermissibly placing calls to Plaintiffs' and the

4    Class Members' cellular telephones using an ATDS or an artificial or prerecorded voice without

5    their prior express consent.

6            53.     Plaintiffs and the members of the class have a legally protected interest in being

7    free from the intrusion of autodialed calls and calls using an artificial or prerecorded voice.

8    These unauthorized and offensive calls harmed Plaintiffs and the members of the proposed class,

9    because they caused Plaintiffs and the members of the proposed class to suffer a nuisance and an

10   invasion of privacy, all as more particularly described above.  Such harm was fairly traceable to

11   Wilshire's violations of the TCPA.

12           54.     Defendant has policies, practices or procedures of placing calls to cell phones

13   using an ATDS or artificial or prerecorded voice regarding the collection of alleged debts, and

14   for other purposes, without the prior consent of the called parties.

15           55.     Defendant's violations were negligent, or alternatively, they were willful or

16   knowing.  47 U.S.C. § 312(f)(1).

17           56.     That any subscriber to cell phone service should have to field calls for the debts of

18   any family member, friend or mere acquaintance is offensive, and the very harm Senator

19   Hollings referred to as the "scourge of modern civilization." Plaintiffs and the proposed class are

20   precisely the persons sought to be protected by the TCPA, and are thus entitled to the full

21   statutory remedies allowed by law.

22                                    **PRAYER FOR RELIEF**

23           WHEREFORE, Plaintiffs request that the Court grant the following relief:

24   A.      Certify this matter as a class action under Rule 23(b)(2) and 23(b)(3).

25   B.      Appoint the named Plaintiffs as class representatives.

26   C.      Appoint the undersigned as Class Counsel for the classes to be represented.

27   D.      Award, statutory damages of $500 per violation determined to be negligent

28   E.      Award statutory damages of $1,500 per violation determined to be willful;

First Amended Complaint for Damages and Equitable Relief

F.     Grant a declaration that Wilshire's equipment and messages are regulated by the TCPA;

G.     Enter an order enjoining Wilshire from further violations of the TCPA; namely prohibiting Wilshire from placing non-emergency calls using an automatic telephone dialing system or an artificial or prerecorded voice to persons who had no personal business relationship with Wilshire and thus had not given consent for such calls;

H.     Grant costs of suit incurred herein;

I.     Award reasonable attorneys' fees as part of a common fund, if any; and

J.     Provide such other or further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury.

Dated:  September 30, 2016                KEMNITZER, BARRON & KRIEG, LLP


                                         By:    /s/ *Bryan Kemnitzer*
                                                BRYAN KEMNITZER
                                                ELLIOT CONN
                                                Attorneys for Plaintiffs VERINA FREEMAN and
                                                VALECEA DIGGS, and the Proposed Class