UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERINA FREEMAN and VALECEA DIGGS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WILSHIRE COMMERCIAL CAPITAL L.L.C., a California limited liability company, dba WILSHIRE CONSUMER CREDIT,<br><br>Defendant. | CIV. NO. 2:15-1428 WBS AC<br><br>MEMORANDUM AND ORDER RE: DEFENDANT'S MOTION TO DENY CLASS AND PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |

Verina Freeman ("Freeman") and Velecea Diggs ("Diggs") (collectively "plaintiffs") initiated this class action against defendant Wilshire Commercial Capital, L.L.C. ("WCC") alleging violations of the Telephonic Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Presently before the court is defendant's Motion to Deny Class Certification (Docket No. 72) and plaintiffs' Motion for Partial Summary Judgment (Docket No. 73.)

I.    Factual and Procedural Background

        Non-party Shanell White ("White") procured an

1

automobile title loan from defendant on January 13, 2009. (Decl. of Ana Vela ("Vela Decl.") (Docket No. 72-4) ¶ 5.) The loan application required that White list references, for which she provided the names and cell phone numbers of Freeman and Diggs. (Id.) Freeman and Diggs had no relationship with defendant throughout the putative class period. (First Amended Compl. ("FAC") (Docket No. 40) ¶ 23.) During the course of her loan, White became delinquent. (Decl. of Bryan McGuire ("McGuire Decl.") (Docket No. 72-2) ¶ 16.) In the course of collection efforts, between December 17, 2010 and November 29, 2011, defendant allegedly called Freeman nine times and Diggs five times in an effort to locate and collect money from White. (Id.)

Plaintiffs initiated this case on July 6, 2015. In November 2015, the court stayed the case pending the resolution of defendant's motion in a separate, but similar, matter. (Docket No. 19.) In the meantime, the court allowed the parties "to conduct limited discovery on the issue of the dialing system that defendant used to call plaintiffs and the putative class members in this action." (Id.) On April 11, 2016, the court lifted the stay. (Docket No. 28.) In September 2016, the court ordered that prior to class discovery and any motion for class certification, the parties would first brief the threshold issues of (1) "plaintiffs' Article III Standing" and (2) "the alleged capacity of defendant's Automatic Telephone Dialing System to make autodialed calls to plaintiffs and proposed class members." (Docket No. 38.) On January 19, 2017, defendant filed a Motion for Summary Judgment due to Lack of Article III Standing of Plaintiffs (Docket No. 42), which the court denied. (Docket No.

2

58.)

II. Defendant's Motion to Deny Class Certification

"At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). Nothing in the federal rules "either vests plaintiffs with the exclusive right to put the class certification issue before the district court or prohibits a defendant from seeking early resolution of the class certification question." Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 939-40 (9th Cir. 2009). Accordingly, there is no "per se rule that precludes defense motions to deny certification, and Plaintiffs have produced no authority to the contrary." Id. at 940.

However, the Vinole court also determined that these types of "preemptive" motions should not be brought or ruled upon until the plaintiff has had a reasonable opportunity to conduct class discovery. Id. at 942. In that case, although the Ninth Circuit allowed defendant to bring a motion to deny class certification prior to plaintiff filing a motion to certify a class, it did so in light of the fact that "[p]laintiffs were provided with adequate time in which to conduct discovery related to the question of class certification." Id.

Here, the court has repeatedly made it clear in numerous status orders that the issues of Article III standing and phone capacity are to be resolved prior to class certification. (See Docket Nos. 52 at 3-5, 72 at 3-6, 67 at 3-6, and 69 at 3-6.) At this point, defendant has not produced

discovery beyond these two threshold issues.  Notably, on March 1, 2017, defendant objected to plaintiffs' document requests, arguing that the "request is overly broad in that it extends beyond the discovery permitted at this stage of litigation as it seeks information beyond telephone calls made to the PLAINTIFFS." (Decl. of Elliot Conn ("Conn Decl."), Ex. 3 (Docket No. 87-3).)

Prior to a Rule 23 Motion seeking class certification, the parties are entitled to conduct discovery in order to provide the court with evidence to either support or refute the requested certification.  See Vinole, 571 F.3d 935 at 942.  However, based on the information above, the court concludes that plaintiffs have not been given the opportunity to engage in the necessary class discovery.  See Kamm v. Cal. City Dev. Co., 509 F.2d 205, 210 (9th Cir. 1975) ("The propriety of a class action cannot be determined in some cases without discovery.")  Therefore, the court concludes that defendant's motion is premature and should be denied.[1]

III. Plaintiffs' Motion for Partial Summary Judgment

A. Legal Standard

---

[1] The court also notes that defendant seeks denial of class certification because plaintiffs "cannot demonstrate that an auto-dialer was ever utilized to call them." (Def.'s P. & A. in Supp. of Mot. to Deny Class Cert. (Docket No. 72-1) at 19.) However, "neither the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class." Blackie v. Barrack, 542 F.2d 891, 901 (9th Cir. 1975). Accordingly, by asking the court to determine whether or not an auto-dialer was in fact used to call plaintiffs, defendant is seeking to obtain a ruling on the merits, which is inappropriate at this stage.

4

1    Summary judgment is proper "if the movant shows that
2 there is no genuine dispute as to any material fact and the
3 movant is entitled to judgment as a matter of law." Fed. R. Civ.
4 P. 56(a). A material fact is one that could affect the outcome
5 of the suit, and a genuine issue is one that could permit a
6 reasonable jury to enter a verdict in the non-moving party's
7 favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
8 (1986).
9    The party moving for summary judgment bears the initial
10 burden of establishing the absence of a genuine issue of material
11 fact and can satisfy this burden by presenting evidence that
12 negates an essential element of the non-moving party's case.
13 Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
14 Alternatively, the movant can demonstrate that the non-moving
15 party cannot provide evidence to support an essential element
16 upon which it will bear the burden of proof at trial. Id. Any
17 inferences drawn from the underlying facts must, however, be
18 viewed in the light most favorable to the party opposing the
19 motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475
20 U.S. 574, 587 (1986).
21    B.   Discussion
22    In order to prove that defendant violated the TCPA,
23 there are three elements plaintiffs need to prove: "(1) the
24 defendant called a cellular telephone number; (2) using an
25 automatic telephone dialing system; (3) without the recipient's
26 prior express consent." Meyer v. Portfolio Recovery Assocs.,
27 LLC, 707 F.3d 1036, 1043 (9th Cir. 2012). Here, the element at
28 issue is whether defendant used an "automatic telephone dialing

system" to call plaintiffs.  Plaintiffs ask the court to find that, as a matter of law, defendant did in fact use this type of phone system, and thereby violated the TCPA.

It is undisputed that defendant used two different dialing systems to place its phone calls--an Aspect Unified IP 6.6 Predictive Dialer ("Aspect") and an Avaya PBX ("Avaya").  The Avaya is a manual dialer system whereas the Aspect is, undeniably, an automatic telephone dialing system, also known as an auto-dialer system.  (Decl. of Jose Hernandez ("Hernandez Decl.") (Docket No. 72-3) ¶¶ 7, 8.)  Thus, the question for the court is whether defendant used the Aspect to call plaintiffs.

### A. Defendant's Phone Records

Defendant uses a system known as Daybreak to record all account activity, including all phone calls made as part of collection efforts.  (McGuire Decl. ¶ 3.)  Daybreak notes are not automatically generated and instead are inputted manually by defendant's employees.  (Id. ¶ 8.)  To catch any potential human error, defendant also relies upon automatically generated call records to maintain a more accurate log of all calls placed.  (Hernandez Decl. ¶ 18.)  Calls made through the Avaya system are automatically recorded in a database system called "ECAS."  (Id. ¶ 14.)  The Aspect system generates an automatic record of phone calls as well, but those records are only maintained for fifteen days.  (Id.)  All calls made on either system are reflected in the invoice records of defendant's phone carrier, Paetec/Windstream ("Windstream records").  (Id.)  However, these records only include phone calls that are picked up either by a person, an answering machine, or a voicemail.  (Id. ¶¶ 12, 13.)

If the phone call is not picked up on the receiving end, there will not be a corresponding charge reflected in the Windstream records. (Id. ¶ 13.)

### B. Calls to Freeman

Plaintiffs allege that defendant placed at least nine calls to Freeman. (Decl. of James Eyraud ("Eyraud Decl.") (Docket No. 42-3) ¶ 5.) All of these calls are recorded in Daybreak. (Id.) Plaintiff further alleges that five of those calls were placed with the Avaya system, and the other four were placed with the Aspect. Plaintiff argues that there are four calls recorded in Daybreak for which there are no corresponding entries in ECAS, the database that records all calls placed using Avaya. Based on this fact, plaintiff avers that these calls must have been made using the Aspect system. (Pls.' P. & A. in Supp. of Mot. for Summ. J. (Docket No. 73) at 7.)[2]

However, defendant raises several doubts as to whether this is true. Specifically, defendant points out that the Daybreak notes are recorded manually and are consequently subject to error. Therefore, if a call is listed in the Daybreak records but does not appear in the Avaya record, it is possible that the call was not in fact placed using the Aspect system but in fact

---

[2] Defendant points out that plaintiffs base most of these conclusions on the expert report of Jeffrey Hansen, which defendant claims is inadmissible because it is based on "simple logic." However, defendant does not dispute the underlying records that Hansen's report is based on, and thus the court need not determine whether or not the report itself is admissible because the court can analyze the admissible records themselves. Accordingly, even if the report were stricken, it would have no impact on the court's analysis or decision.

7

was not placed at all, and the call was only listed in Daybreak because of human error.[3] In other words, for each call that appears in Daybreak but was not in the Avaya records, plaintiffs conclude that the call must have been placed using Aspect, but, alternatively, the call could simply not have been placed at all.

Plaintiffs argue that defendant previously provided the court with a declaration in which defendant's vice president admitted that the Daybreak notes demonstrate that defendant called Freeman nine times. (Eyraud Decl. ¶ 5.) Based on this, plaintiffs argue that defendant cannot now claim that these calls were never made. Plaintiffs aver that allowing defendant to present this argument would contradict defendant's earlier declaration, and therefore would violate Daubert v. NRA Group, LLC, 861 F.3d 382, 391 (3d Cir. 2017)("When a nonmovant's affidavit contradicts earlier deposition testimony without a satisfactory or plausible explanation, a district court may disregard it at summary judgment in deciding if a genuine, material factual dispute exists.").

However, the Daubert court explained that it only intended to prohibit subsequent "sham" declarations, and the court here does not find that defendant is presenting a sham declaration, nor even one that is contradictory to a previously made statement. Defendant is not attempting to claim that the Daybreak records do not list these nine calls, but instead is simply disputing the accuracy of those records. It is possible,

---

[3] Defendant admits that it previously had issues with its employees entering false notes or inaccurate entries, and in fact had to discipline multiple employees for "padding" the records to receive certain incentives. (Vela Decl. ¶ 16.)

8

and indeed the case here, for defendant to admit both that the
Daybreak records reflect that a certain number of calls were
made, and also to simultaneously argue that, despite what these
records may indicate, these calls were not in fact ever made.
Therefore, the court concludes that defendant's previous
declaration does not preclude defendant from now suggesting that
the Daybreak notes are not accurate.

    Defendant also points out that there are some Daybreak records indicating that a phone call was made and answered, and yet there is no corresponding entry in Windstream. Defendants argue that the fact that these phone calls do not appear in the Windstream records proves that the subject calls were not made. However, Windstream records are only generated for calls that are answered. Accordingly, the omission of the calls from the Windstream records is insufficient to prove that the calls were not placed, although it does add more weight to defendant's arguments. Inarguably, if the calls had been answered, they would appear in the Windstream records, and yet they do not. If defendant's employees could have mistakenly indicated in Daybreak that a call was answered when it was not, then it is plausible that the same employees could have indicated that a call was placed when in reality no such call was made. Therefore, because plaintiff seemingly must concede that at least a portion of the Daybreak records are incorrect, a reasonable trier of fact could find that the Daybreak records are inaccurate and do not correctly reflect whether certain calls were made.

    Plaintiffs argue that the court should not be able to consider the Windstream records because they are inadmissible

hearsay. (Pls.' Reply P. & A. in Supp. of Mot. for Summ. J. (Docket No. 91) at 3.) However, the Ninth Circuit has concluded that telephone records are business records, and that an automatically generated record of a telephone call is admissible evidence. United States v. Linn, 880 F.2d 209, 216 (9th Cir. 1989), abrogated on other grounds by Fla. V. White, 526 U.S. 559 (1999). Further, Hernandez, a WCC Telecommunications Administrator, declared that he was able to access and search all Windstream invoices and that these records were kept as part of WCC's regular business practices. (Decl. of Jose Hernandez (Docket No. 90-3) ¶¶ 15-20.) Moreover, even if the court did not consider the Windstream records, it would nonetheless conclude that defendant has raised sufficient doubts regarding whether the Aspect was used.

Accordingly, the court concludes that a genuine, material factual dispute exists as to whether defendant did in fact use the Aspect system to call Freeman.

C. Calls to Diggs

Plaintiffs allege that defendant placed at least five calls to Diggs, that only one of those calls was placed with the Avaya system, and that the other four were placed with the Aspect. In reaching this conclusion, plaintiffs rely upon the same reasoning explained above. As with the Freeman calls, the court again finds that defendant has raised sufficient doubts as to whether defendant in fact used the Aspect system to call Diggs, and thus a dispute of material facts exists.

IT IS THEREFORE ORDERED that plaintiffs' Motion for Summary Judgment (Docket No. 73) be, and the same hereby is,

DENIED.

IT IS FURTHER ORDERED that defendant's Motion to Deny Class Certification (Docket No. 72) be, and the same hereby is, DENIED.

Dated: March 6, 2018

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE